CLERK'S OFFICE COPY

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOTICE OF ENTRY OF
## JUDGMENT ACCOMPANIED BY OPINION

OPINION FILED AND JUDGMENT ENTERED: 05/14/08

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

No costs were taxed in this appeal.

Regarding exhibits and visual aids: Your attention is directed to FRAP 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

JAN HORBALY
Clerk

cc:  John T. Gallagher
     John Horvack

EI DUPONT V MACDERMID, 2007-1568
DCT - NJ, 06-CV-3383

CLERK'S OFFICE COPY

# United States Court of Appeals for the Federal Circuit

2007-1568

E.I. DU PONT DE NEMOURS AND COMPANY,

Plaintiff-Appellant,

v.

MACDERMID PRINTING SOLUTIONS, L.L.C.,

Defendant-Appellee.

Lindley J. Brenza, Bartlit Beck Herman Palenchar & Scott LLP, of Denver, Colorado, argued for plaintiff-appellant. With him on the brief was Allison Freedman, of Chicago, Illinois. Of counsel on the brief was John T. Gallagher, Morgan & Finnegan, LLP, of New York, New York. Of counsel was Richard D. Catenacci, Connell Foley LLP, of Roseland, New Jersey.

John R. Horvack, Jr., Carmody & Torrance LLP, of New Haven, Connecticut, argued for defendant-appellee. With him on the brief was Fatima Lahnin.

Appealed from: United States District Court for the District of New Jersey

Judge Mary L. Cooper

# United States Court of Appeals for the Federal Circuit

2007-1568

E.I. DU PONT DE NEMOURS AND COMPANY,

Plaintiff-Appellant,

v.

MACDERMID PRINTING SOLUTIONS, L.L.C.,

Defendant-Appellee.

Appeal from United States District Court for the District of New Jersey in case no. 06-CV-3383, Judge Mary L. Cooper.

---

DECIDED: May 14, 2008

---

Before MICHEL, Chief Judge, PROST, Circuit Judge, and POGUE,* Judge.

MICHEL, Chief Judge.

E.I. du Pont de Nemours & Company ("DuPont") appeals from the district court's denial of its motion for preliminary injunction. Memorandum Opinion, E.I. du Pont de Nemours & Company v. MacDermid, Inc., Case No. 06-CV-3383 (MLC/TJB) (D.N.J. Aug. 13, 2007) ("Preliminary Injunction Opinion"). We heard oral argument on April 9, 2008. We hold that the district court abused its discretion in finding that a substantial question as to validity existed because of uncertainty regarding the priority date.

---

\*     Honorable Donald Pogue, Judge, United States Court of International Trade, sitting by designation.

Because the district court did not reach the parties' remaining arguments as to validity and enforceability as well as the remaining preliminary injunction factors, we vacate and remand for the district court to consider these issues in light of the correct priority date.

I.

DuPont is the assignee of U.S. Patent No. 6,773,859 B2 ("the '859 patent"), titled "Process for Making a Flexographic Printing Plate and a Photosensitive Element for Use in the Process." The application for this patent was filed on February 27, 2002, and the patent issued on August 10, 2004. According to DuPont, its Cyrel FAST digital thermal technology is its commercial embodiment of the invention of the '859 patent.

In prosecuting the '859 patent, DuPont originally filed a provisional application on March 6, 2001, and on February 27, 2002, it filed a non-provisional application. The Application Data Sheet ("ADS") filed with the non-provisional application stated: "Continuity Data: This application is a non-provisional of provisional 60/273669 2001-03-06 WHICH IS PENDING." The patent as issued, however, did not reference the provisional application due to an oversight by the Patent and Trademark Office ("PTO"). After issuance, DuPont sought a certificate of correction pursuant to 35 U.S.C. § 254 to add a reference to the provisional application on the title page of the '859 patent. The PTO issued the Certificate of Correction on July 26, 2005, adding to the title page, "Related U.S. Application Data, Provisional application No. 60/273,669, filed on March 6, 2001."

In April 2006, DuPont sued MacDermid Inc. and MacDermid Printing Solutions, LLC ("MacDermid") in the District of Colorado for patent infringement, alleging that MacDermid's Magma, MLT, and Lava products infringed DuPont's '859 patent as well

as another patent not at issue in this appeal.[1] In July 2006, the case was transferred from the District of Colorado to the District of New Jersey.

In October 2006, DuPont moved for a preliminary injunction, seeking to enjoin MacDermid from continuing to infringe claim 1 of the '859 patent. DuPont argued that MacDermid's MLT and Magma plates infringe claim 1 and that MacDermid induces infringement of claim 1 by encouraging customers to use its Lava system and MLT and Magma plates in an infringing manner. DuPont also argued that its patent is valid, noting the presumption of validity, evidence of commercial success, and MacDermid's offer to take a license. DuPont further argued that it had not committed inequitable conduct in prosecuting its patent.

In response, MacDermid raised a number of validity and enforceability challenges. Relevant to this appeal, MacDermid argued that the '859 patent was invalid under Section 102(b) because the invention was on sale or in public use before the critical date. According to MacDermid, that date was February 27, 2001, or one year before the filing date of the non-provisional application.

In reply, DuPont argued that MacDermid had not created a substantial question of validity based on the public use or on sale bars of Section 102(b). In particular, DuPont argued that MacDermid's evidence of sales prior to the critical date were actually of prior technology not claimed in the '859 patent (analog and not digital technology). DuPont also responded to MacDermid's other invalidity and unenforceability arguments. In support of its reply, DuPont filed witness declarations

---

[1] The '859 patent and the pertinent certificate of correction were attached as an exhibit to the complaint.

2007-1568                              3

that either said that the filing date for the '859 patent was February 27, 2002 or suggested that February 27, 2001 was the critical date.

On February 16, 2007, the district court held a hearing on DuPont's motion for preliminary injunction. At the hearing, DuPont's counsel addressed a September 2000 trade show at which it "gave a general demonstration of the workflow for a digital thermally developed plate." DuPont's counsel stated that the critical date was February 27, 2001 and that the September 2000 trade show was before the critical date.

The court then agreed to allow each party to submit a letter brief regarding whether the use at that trade show was a public use. Both MacDermid and DuPont submitted letter briefs that presented substantive arguments on this point. In its letter brief, DuPont still appeared to accept that the critical date was one year before the filing date of the non-provisional application.

Two days later, DuPont submitted a letter to the court, for the first time identifying an earlier critical date. The letter stated:

> Further investigation has revealed that the '859 patent was based upon, and claims priority to a provisional patent application, 60/273,669, filed on March 6, 2001. This means that only activities prior to March 6, 200[0] (sic) can invalidate the '859 patent under 35 U.S.C. [§] 102(b). . . . Accordingly, the demonstration at Label Expo in September 2000 is not an invalidating bar under 35 U.S.C. [§] 102(b).

J. App'x at 3007.

The next day, the parties had a telephone conference with the court regarding DuPont's letter. At the hearing, the district court denied MacDermid's oral motion to expunge DuPont's letter. In doing so the court stated:

> Well, from where my role is positioned as opposed to your adversarial roles, what strikes me is that if I were to rule let's say adverse to du Pont based upon a set of facts that is on its face fact-wise inescapable, then the

> Circuit Court could well find plain error, and this would be not a service to either party or the Circuit Court. Having been alerted to this problem and simply to judicially exclude any consideration of it, it's true that we're still in briefing on this supplemental issue. I just . . . don't see that the positions have hardened to the point where I can ignore the import of this fact.

J. App'x at 3252. The court then allowed the parties to each file a letter brief explaining their positions both on procedural and substantive bases.

MacDermid then filed a letter brief opposing DuPont's argument that the critical date should be based on the provisional rather than the non-provisional application. MacDermid argued that DuPont's statements detailed above that the critical date was February 27, 2001, were binding judicial admissions and that DuPont was estopped from taking a contrary position. If not judicial admissions, then MacDermid argued that they were evidentiary admissions which "are more than sufficient to create a substantial question concerning the validity of the '859 patent." MacDermid also argued that the non-provisional application was not entitled to the filing date of the provisional because: (1) the non-provisional application names inventors not named in the provisional application; (2) DuPont did not use the "proper language" in claiming priority to the provisional; (3) the filing receipt, published application, and issued patent did not reference the provisional, showing that the PTO did not recognize priority to the provisional; (4) DuPont did not alert the PTO that the priority information was missing until the patent issued; and (5) the Certificate of Correction that added the priority information was wrongly issued. MacDermid also argued that it would be unfairly prejudiced by DuPont's change of position.

DuPont submitted a letter in response, stating that it had promptly notified the court of its discovery that the '859 patent was entitled to an earlier effective filing date,

and that MacDermid admitted it had been aware of the provisional application. DuPont also argued that its non-provisional application had properly claimed priority to the provisional application, thus entitling it to a March 6, 2001 effective filing date, and that it did not make binding judicial admissions.

On August 13, 2007, the district court entered a memorandum opinion construing various terms and denying DuPont's motion for a preliminary injunction. <u>Preliminary Injunction Opinion</u> at 1, 3. The district court first noted that MacDermid had not disputed infringement in opposing DuPont's motion for a preliminary injunction, and so the court held that DuPont had shown a reasonable likelihood of prevailing on infringement. <u>Id.</u> at 47.[2]

Next, the court addressed whether MacDermid had raised a substantial question of validity under Section 102(b). <u>Id.</u> at 48. After laying out the parties' arguments as to the various prior uses, the court addressed DuPont's argument that the critical date should be based on the filing date of the provisional application rather than the non-provisional application. <u>Id.</u> at 51. The district court held that "DuPont [had] not shown that MacDermid's asserted defense that the '859 patent is invalid under either the public use or on-sale bars of Section 102(b) lacks substantial merit." <u>Id.</u> at 55. The court noted that the parties disputed whether DuPont should be allowed to argue the earlier critical date based on the provisional application. <u>Id.</u> Without explicitly deciding

---

[2] In its brief on appeal and at oral argument, MacDermid stated that it did indeed contest infringement and argued that DuPont failed to show direct infringement by any of MacDermid's customers. A review of MacDermid's opposition to the motion for preliminary injunction shows that MacDermid raised only arguments related to validity and unenforceability below. Because nothing in MacDermid's briefing below raised non-infringement as an issue, we find no error in the district court's determination that MacDermid did not dispute infringement.

2007-1568          6

whether DuPont's argument should be allowed, the court held that DuPont had failed to prove the earlier critical date in any event and that DuPont's earlier admissions as to the later critical date raised a substantial question as to validity:

> Even if the Court permits DuPont to now argue that March 6, 2000 is the critical date, such statement would require evidence that was not proffered in DuPont's briefs in support of its motion or during oral argument. Further, the Court agrees with MacDermid that DuPont's numerous assertions that the critical date is February 27, 2001 and its subsequent letter stating that the critical date is actually March 6, 2000 raise substantial questions regarding whether the invention of the '859 patent was in public use or on sale one year prior to the date of the applicable patent application.

Id. at 56. The district court found that it could not grant a preliminary injunction on the record before it, but reserved judgment as to how it would view the issue on a fully developed record on summary judgment. Id. In a footnote, the court stated:

> If the Court of Appeals determines that it is preferable that this Court make factual findings on the issue of the correct 'critical date,' for purposes of deciding this preliminary injunction motion, we will permit both parties to fully brief that issue and we will consider any request for an evidentiary hearing limited to that issue.

Id. at 56 n.9.

The district court declined to address MacDermid's remaining invalidity and unenforceability arguments. Id. at 56. And because it found that DuPont had not shown a likelihood of success on the merits as to validity, the court did not address the remaining preliminary injunction factors. Id. at 57.

DuPont then filed a notice of appeal of the district court's denial of a preliminary injunction. The district court sua sponte stayed the case and administratively terminated the case subject to later reopening. We have jurisdiction pursuant to 28 U.S.C. § 1292(c)(1).

2007-1568                                    7

II.

We review the district court's denial of a motion for preliminary injunctive relief for abuse of discretion, the underlying factual determinations for clear error, and legal conclusions de novo. E.g., Tate Access Floors, Inc. v. Interface Architectural Res., Inc., 279 F.3d 1357, 1364 (Fed. Cir. 2002). In seeking a preliminary injunction, the patentee has the burden to show a likelihood of success regarding the patent's validity; if the accused infringer raises "a substantial question regarding validity," the district court should find that the patentee has not shown a likelihood of success on the merits. See Entegris, Inc. v. Pall Corp., 490 F.3d 1340, 1351 (Fed. Cir. 2007).

On appeal, the sole issue raised by DuPont is whether the district court correctly held that MacDermid raised a substantial question of validity based on the uncertainty as to whether the non-provisional application was entitled to claim priority to the provisional application. We find that this conclusion was an abuse of discretion because based on the undisputed facts contained in the prosecution history, the non-provisional application was entitled to the filing date of the provisional application as a matter of law.[3]

---

[3] MacDermid argues that DuPont made a binding judicial or evidentiary admission that precludes DuPont from arguing an earlier effective filing date. The district court at least held that DuPont made no admissions that would bind it in later proceedings in the case (i.e., summary judgment). Preliminary Injunction Opinion at 56. The district court made no clear ruling, however, as to whether DuPont was bound by its prior statements for the purpose of its motion for preliminary injunction. Because the district court did not explicitly preclude DuPont's argument, we see no reason to do so in the first instance. Since MacDermid admittedly was aware of the provisional application, it is difficult to see how MacDermid would be prejudiced by its consideration in evaluating validity. Additionally, we have reviewed the cases cited by MacDermid in support of its argument that DuPont made a binding judicial or evidentiary admission and find that none compel this court to find that a binding admission was made.

35 U.S.C. § 119(e)(1) states in relevant part:

> An application for patent . . . for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in a provisional application . . . , by an inventor or inventors named in the provisional application, shall have the same effect, as to such invention, as though filed on the date of the provisional application . . . if the application for patent . . . is filed not later than 12 months after the date on which the provisional application was filed and if it contains or is amended to contain a specific reference to the provisional application.

Under this section, four requirements must be met for a non-provisional application to claim priority to a provisional application: (1) the provisional must comply with the requirements of section 112, first paragraph, and the non-provisional must be for the same invention; (2) the non-provisional must be filed within twelve months of the provisional; (3) there must be an overlap of inventorship; and (4) the non-provisional must include a specific reference to the provisional. It is undisputed that the first two requirements were met in this case. The provisional and non-provisional applications had the same written description and claims, and the non-provisional application was filed within a year of the provisional application (the provisional was filed on March 6, 2001, and the non-provisional was filed on February 27, 2002). MacDermid argues, however, that the latter two requirements (overlap of inventorship and specific reference) were not met.

The facts underlying MacDermid's arguments, however, are not disputed (i.e., the extent of the overlap of inventorship and the language contained in the non-provisional application referencing the provisional application). The only issue is the legal significance of these facts, i.e. whether the non-provisional application is entitled to claim the priority date of the provisional application. Determination of the priority date (e.g., the effective filing date) is purely a question of law if the facts underlying that

2007-1568

9

determination are undisputed. See Broadcast Innovation, L.L.C. v. Charter Commc'n, Inc., 420 F.3d 1364, 1366 (Fed. Cir. 2005).

Here, the district court gave two reasons why a substantial question of validity was present: (1) DuPont had provided insufficient evidence to show that it was entitled to the priority date of the provisional application and (2) the conflict in DuPont's statements as to the critical date (initially conceding the effective filing date as that of the non-provisional application but then later arguing that the effective filing date should be that of the provisional application). Neither of these concerns was warranted.

First, it is unclear what necessary evidence the district court thought was missing from the preliminary injunction record. In responding to the motion for preliminary injunction, MacDermid provided the district court with the patent's prosecution history including the ADS containing the reference to the provisional application, and DuPont's complaint included as an attachment the certificate of correction which corrected the patent to include a reference to the provisional application. We see no evidentiary deficiency that prevented the district court from resolving this issue.

Additionally, since the facts underlying the priority determination are undisputed, DuPont's counsel's conflicting characterization of those facts is immaterial to the legal analysis and cannot serve to create a substantial question of validity.[4] DuPont's counsel candidly admitted at oral argument in this appeal that the initial concession of a later priority date was based on an oversight, but that the oversight was corrected as soon as it was discovered. Such inconsistent attorney argument standing alone cannot

---

[4] We recognize that the district court was initially reasonably misled by DuPont's counsel's incorrect statements as to the priority date.

2007-1568        10

create a substantial question as to a purely legal issue when the undisputed facts necessary to resolve the legal issue are before the court.

We thus conclude that the district court's reliance on lack of evidence and conflicting attorney argument to find a substantial question of validity was an abuse of discretion. Because the facts that DuPont contends entitle the '859 patent to the effective filing date of the provisional application are not disputed, we can resolve this question in the first instance.

A.   <u>Overlap of Inventorship</u>

MacDermid argues that the '859 patent cannot claim priority to the provisional application because the provisional application named only one inventor, whereas the issued patent names five inventors. Because the provisional and non-provisional applications were identical, the argument goes, they should have named the same inventors, or DuPont should have at least amended the provisional application to name additional inventors. 37 C.F.R. § 1.48(d) ("If the name or names of an inventor or inventors were omitted in a provisional application through error without any deceptive intention on the part of the omitted inventor or inventors, the provisional application may be amended to add the name or names of the omitted inventor or inventors."). According to MacDermid, overlap of at least one inventor is insufficient because "all patent applications, including provisional applications, need to be made in the names of the true inventors." We disagree.

This court has held that "for [a] non-provisional utility application to be afforded the priority date of the provisional application, the two applications must share at least one common inventor." New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co., 298 F.3d 1290,

1294 (Fed. Cir. 2002). While an applicant can correct the inventorship of a provisional application under 37 C.F.R. § 1.48(d), both comments in final rulemaking on this regulation and the Manual of Patent Examining Procedure state that correction of inventorship of a provisional application is normally not necessary unless the correction is needed to establish an overlap of inventorship. Manual of Patent Examining Procedure § 201.03 (8th ed., Rev. 6, 2007) ("MPEP") ("For provisional applications, it may not be necessary to correct the inventorship under 37 CFR 1.48 (d) and (e) unless there would be no overlap of inventors upon the filing of the nonprovisional application with the correct inventorship."); Changes to Patent Practice and Procedure, 62 Fed. Reg. 53132, 53139 (Oct. 10, 1997) ("Section 1.48(d)(1) is also clarified to specify that the error to be addressed is the inventorship error. It is not expected that the party filing a provisional application will normally need to correct an error in inventorship under this paragraph by adding an inventor therein except when necessary under § 1.78 to establish an overlap of inventorship with a continuing application.").

>The MPEP further states:
>
>An error in not naming or in naming a person as an inventor in a provisional application would not require correction under either 37 C.F.R. 1.48(d) (to add an inventor) or 37 C.F.R. 1.48(e) (to delete an inventor) in the provisional application so long as the nonprovisional application naming the correct inventorship would contain <u>an overlap of at least one inventor</u> with the provisional application. The existence of inventorship overlap would prevent the original inventorship error from having any effect upon the ability of the provisional application to serve as a basis for a benefit claim under 35 U.S.C. 119(e) with the U.S. Patent and Trademark Office.

MPEP § 201.03 (emphasis added).

In this case, the provisional application named Roxy Ni Fan as an inventor, and the non-provisional also named Fan as an inventor. Thus, there is at least one common

2007-1568                                  12

inventor in the provisional and non-provisional, and the requirement for overlap of inventorship was met.

B.   Specific Reference

MacDermid argues that the reference in the non-provisional application was insufficient to claim priority to the provisional application. It is undisputed that the Application Data Sheet submitted with the non-provisional application stated: "Continuity Data: This application is a non-provisional of provisional 60/273669 2001-03-06 WHICH IS PENDING."

35 U.S.C. § 119(e)(1) requires, for a claim of priority, that the non-provisional application contain "a specific reference to the provisional application." Under MPEP § 201.11, the specific reference can be either in the first sentence of the specification or in the application data sheet. "If the specific reference is only contained in the application data sheet, then the benefit claim information will be included on the front page of any patent or patent application publication, but will not be included in the first sentence(s) of the specification." Id.; see also 37 C.F.R. § 1.76(b)(5) ("Providing [domestic priority information] in the application data sheet constitutes the specific reference required by 35 U.S.C. 119(e) . . . , and need not otherwise be made part of the specification."); 37 C.F.R. § 1.76(d)(4) ("The Office will capture bibliographic information from the application data sheet . . .").

In this case, it is undisputed that the ADS contained a reference to the provisional application. But MacDermid argues that the reference in the ADS was insufficient because DuPont did not use the language that is "authorized by the MPEP to claim the benefit of a provisional application." Under MPEP § 201.11, "[w]hen the

2007-1568                                      13

nonprovisional application is entitled to an earlier U.S. effective filing date of one or more provisional applications under 35 U.S.C. 119(e), a statement <u>such as</u> 'This application claims the benefit of U.S. Provisional Application No. 60/ ---, filed ---, and U.S. Provisional Application No. 60/ ---, filed ---.' should appear as the first sentence(s) of the description or in an application data sheet." (emphasis added).

Here, rather than the precise language suggested in the MPEP, the ADS in the non-provisional application stated: "Continuity Data: This application is a non-provisional of provisional 60/273669 2001-03-06 WHICH IS PENDING." Contrary to MacDermid's argument, this reference did not run afoul of the MPEP by failing to use magic words. The MPEP provision requires only that the applicant use a statement "such as" the one provided in Section 201.11. A reasonable person reading the language in the ADS would have concluded that the applicant was claiming priority to an earlier provisional application. Thus, we find no defect in the language used to reference the provisional application here.

### C. Certificate of Correction

Despite the language in the ADS, the '859 patent issued without any reference to the provisional application. DuPont sought a certificate of correction pursuant to 35 U.S.C. § 254, which authorizes certificates of correction for mistakes made through the fault of the PTO, to add the specific reference to the provisional application on the title page of the '859 patent. The PTO issued the Certificate of Correction on July 26, 2005, adding to the title page, "Related U.S. Application Data, Provisional application No. 60/273,669, filed on March 6, 2001."

MacDermid argues that the Certificate of Correction is invalid because the error was DuPont's and not the PTO's. According to MacDermid, the failure to include the continuity data on the title page of the patent was due to numerous errors by DuPont, including failure to correct the filing receipt and the published application, both of which made no mention of the priority claim.[5]

By putting the continuity data in the ADS, DuPont expected that the PTO would capture the information and place it on the title page of its patent. As MacDermid notes, however, there were some indications during prosecution that the PTO had failed to capture the information. MPEP § 201.11. We hold that a lack of diligence during prosecution, at least under the facts of this case, does not convert a PTO error into an applicant error for the purpose of seeking a post-issuance certificate of correction.

It is, of course, desirable to have applicants correct the PTO's mistakes in pending applications as soon as possible so that the correct information is reflected in published applications and issued patents. Nevertheless, nothing in the statute conditions eligibility for a certificate to correct PTO error on the applicant's diligence in correcting the mistake, and the statute does not set any time limit for seeking such corrections. 35 U.S.C. § 254 ("Whenever a mistake in a patent, incurred through the fault of the Patent and Trademark Office, is clearly disclosed by the records of the Office, the Director may issue a certificate of correction stating the fact and nature of such mistake, under seal, without charge, to be recorded in the records of patents."). Additionally, because there is a requirement that such certificates issue only if the

---

[5] MacDermid argues that DuPont also made an error by failing to use the precise language given in the MPEP for claiming priority to a provisional application. However, as discussed above, we have concluded that the language used by DuPont was a sufficient, specific reference to the provisional application.

2007-1568                                15

mistake is "clearly disclosed by the records of the [PTO]," the chance that competitors will be harmed by any delay is minimal. In this case, the continuity data was included in the ADS, a document contained in the prosecution history.

Further, DuPont could have corrected its published application under 37 C.F.R. § 1.221 and MPEP § 1130. While failure to make such a correction may have potential consequences,[6] we see no reason why failure to correct a published application should prevent the patentee from later correcting his issued patent under 35 U.S.C. § 254.

Finally, MacDermid argues that even if the certificate of correction is valid, it has no effect in this case because it was issued "after the cause of action arose." This argument is based on a misreading of Southwest Software, Inc. v. Harlequin Inc., 226 F.3d 1280, 1295 (Fed. Cir. 2000) (holding that a certificate of correction is not effective for causes of action arising before its issuance). MacDermid argues that the certificate of correction in this case issued after DuPont's cause of action arose because MacDermid was already engaged in the allegedly infringing conduct when the patent issued. As DuPont correctly notes, however, we have held that each act of infringement gives rise to a separate cause of action. Hazelquist v. Guchi Moochie Tackle Co., Inc., 437 F.3d 1178, 1180 (Fed. Cir. 2006) ("Our case law clearly states that each act of patent infringement gives rise to a separate cause of action."). In Southwest Software, the court stated "it strikes us as an illogical result to allow the patent holder, once the certificate of correction has issued, to sue an alleged infringer for activities that occurred

---

[6] For example, failure to correct a published application could affect a patentee's ability to collect a reasonable royalty during the time period from publication until issuance under 35 U.S.C. § 154(d) if the errors in the published application resulted in the issued claims not being "substantially identical" to those in the published application.

2007-1568                                16

before the issuance of the certificate of correction." Southwest Software, 226 F.3d at 1295-96. In contrast here, only MacDermid's future conduct (i.e., prospective infringement occurring after the issuance of the certificate of correction) is at issue for the purposes of the preliminary injunction motion. Further, unlike Southwest Software, the Certificate of Correction issued prior to DuPont filing suit.

In sum, the undisputed facts in this case show that the '859 patent is entitled to claim priority to the provisional application as a matter of law: the provisional and non-provisional applications are identical; the non-provisional application was filed within 12 months of the filing of the provisional application; the two applications share a common inventor; and the non-provisional application included a specific reference to the provisional application in the application data sheet. Thus, we vacate and remand for the district court to consider MacDermid's remaining invalidity and unenforceability challenges in light of the correct priority date, as well as the remaining preliminary injunction factors.[7]

---

[7] MacDermid argues that even if the critical date is March 6, 2000, claim 1 would still be invalid under Section 102(b) because DuPont publicly used an analog version of Cyrel FAST at a trade show in April 1999. But the district court expressly declined to decide whether analog and digital or only digital technology were within the scope of the claim. In any event, MacDermid cites no record evidence to support this assertion, and we decline to reach this issue for the first time in this appeal. Evidence concerning the 1999 trade show should be raised in the first instance with the district court on remand.

Additionally, MacDermid raises numerous other alternative grounds for affirmance, including anticipation, obviousness, failure to disclose best mode, and inequitable conduct. None of these grounds were reached by the district court, and all would require fact finding that is unnecessary for this court to undertake in the first instance. Thus, we decline to reach these issues.

2007-1568                                   17

III.

For these reasons, the district court's order denying the motion for preliminary injunction is

### VACATED AND REMANDED.