**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| E.I. DU PONT DE NEMOURS & | : | CIVIL ACTION NO. 06-3383 (MLC) |
| COMPANY, | : | |
| | : | **MEMORANDUM OPINION & ORDER** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MACDERMID, INC., et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**COOPER, District Judge**

Plaintiff, E.I. du Pont de Nemours & Company ("DuPont"),
commenced this action against defendants, MacDermid, Inc. and
MacDermid Printing Solutions, L.L.C. ("MacDermid"), alleging,
inter alia, infringement of DuPont's United States Patent Nos.
6,171,758 B1 ("'758 Patent") and 6,773,859 B2 ("'859 Patent").
See D. Colo. Civ. Action No. 06-816, dkt. entry no. 1, Compl. at
¶¶ 6-9, 14-17.  The parties have engaged in discovery, including
document production.  MacDermid disputes whether many of the
documents identified on DuPont's privilege logs are protected by
the attorney-client privilege.  (See non-docketed entry,
MacDermid 6-18-09 Letter.)  The parties have submitted
approximately ninety sample documents for the Court's in camera
review and determination of whether the documents are privileged.
(See id.; non-docketed entry, DuPont 6-9-09 Letter.)  The Court
has reviewed the letter briefs submitted by the parties and the

ninety-three sample documents.[1]  The Court finds that documents 1-12, 14-17, 19, 22, 30, 31, 32, 35, 36, 38, 39, 62, 69, 71, 72, 73, 74, 75, 76, 77, 78, 82, 83, 85, and 89 are not protected by the attorney-client privilege, and that documents 21, 21A, 25, 34, 37, 41, 43, 44, 45, 47, 48, 49, 53, 57, 58, 59, 60, 61, 63, 79, 87, 87A, 90, and 90A are protected by the attorney-client privilege.  The Court, because of insufficient information on the privilege logs, cannot determine whether documents 13, 18, 20, 26, 27, 29, 33, 46, 50, 51, 52, 54, 56, 64, 65, 66, 67, 68, 70, 80, 81, 84, and 86 are protected by the attorney-client privilege.[2]  The Court will direct DuPont to submit a revised privilege log so that the Court can determine whether these documents are privileged.

### DISCUSSION

### I.   Legal Standards Governing Attorney-Client Privilege

The attorney-client privilege "protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice."  In re Echostar Commc'ns

---

[1]  The Court will use the numbering system used by the parties to identify the documents being reviewed.  (See non-docketed entry, DuPont 6-8-09 Letter.)

[2]  The Court will not determine whether documents 23-24, 28, 40, 42, 55, and 88 are protected by the attorney-client privilege because DuPont has stated that these documents will be produced as they were either inadvertently disclosed already or inadvertently listed on the privilege logs.  (See DuPont 6-9-09 Letter at 5 n.3.)

  
Corp., 448 F.3d 1294, 1300 (Fed. Cir. 2006) (internal quotation omitted); Genentech, Inc. v. U.S. Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997).  The purpose of the attorney-client privilege is to "promote full and frank communication between a client and his attorney so that the client can make well-informed legal decisions and conform his activities to the law."  In re Echostar Commc'ns Corp., 448 F.3d at 1300-01.  The central inquiry in determining if the attorney-client privilege applies is whether the client made the communication for the purpose of obtaining legal advice.  In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 805 (Fed. Cir. 2000).  A communication will be privileged where the "overall tenor of the document indicates that it is a request for legal advice or services."  Id. at 806. Also, a document containing technical information may still be privileged since requests for legal advice on patentability or preparation of a patent application require examination of technical information.  Id.

        Various district courts have addressed whether the attorney-client privilege also extends to communications made to and by non-attorney patent agents; however, there is no consensus on whether, and to what extent, the attorney-client privilege applies to non-attorney patent agents.  See Gorman v. Polar Electro, Inc., 137 F.Supp.2d 223, 227 (E.D.N.Y. 2001) (acknowledging disagreement among various federal district courts

on question of whether attorney-client privilege applies to non-attorney patent agents).  Compare Agfa Corp. v. Creo Prods., Inc., No. 00-10836, 2002 WL 1787534, at *2 (D. Mass. Aug. 1, 2002) (concluding that communications to non-attorney patent agent are not protected by attorney-client privilege unless made for purpose of obtaining legal advice from an attorney), and McCook Metals L.L.C. v. Alcoa Inc., 192 F.R.D. 242, 256 (N.D. Ill. 2000) (commenting that generally communications from patent agents are not protected by attorney-client privilege), with Polyvision Corp. v. Smart Techs. Inc., No. 03-476, 2006 WL 581037, at *3 (W.D. Mich. Mar. 7, 2006) (recognizing that attorney-client privilege applies to registered non-attorney patent agents for limited purpose of presenting and prosecuting patent applications before United States Patent and Trademark Office), and In re Ampicillin Antitrust Litig., 81 F.R.D. 377, 394 (D.D.C. 1978) (concluding that attorney-client privilege applies to non-attorney registered patent agents authorized to represent clients in adversary process that will substantially affect client's legal rights).

There are differences even among the courts that recognize application of the attorney-client privilege to non-attorney patent agents.  Some courts apply the privilege to communications with non-attorney patent agents, but only when they are acting under the authority and control of counsel and the communications

4

relate to prosecution of a patent application. <u>Gorman</u>, 137
F.Supp.2d at 227; <u>Saxholm AS v. Dynal, Inc.</u>, 164 F.R.D. 331, 337
(E.D.N.Y. 1996); <u>see also</u> <u>Cargill, Inc. v. Sears Petroleum &</u>
<u>Transp. Corp.</u>, No. 03-530, 2003 WL 22225580, at *4-*5 (N.D.N.Y.
Sept. 17, 2003) (applying attorney-client privilege to non-
attorney patent agent when patent agent is acting under
instructions of attorney and assisting attorney in providing
legal services); <u>Willemijn Houdstermaatschaapij BV v. Apollo</u>
<u>Computer Inc.</u>, 707 F.Supp. 1429, 1446 (D. Del. 1989) (finding
that attorney-client privilege may apply to communications of
non-attorney patent agent working at direction, and under
supervision, of attorney).  Other courts limit application of the
attorney-client privilege to communications with registered non-
attorney patent agents made for the purpose of presenting and
prosecuting patent applications before the United States Patent
and Trademark Office.  <u>Polyvision Corp.</u>, 2006 WL 581037, at *3;
<u>John Labatt Ltd. v. Molson Breweries</u>, 898 F.Supp. 471, 474-75
(E.D. Mich. 1995).  These courts do not extend the privilege to
communications with non-attorney patent agents made after the
issuance of a patent.  <u>Polyvision Corp.</u>, 2006 WL 581037, at *3;
<u>John Labatt</u>, 898 F.Supp. at 474-75.  Still other courts recognize
that the attorney-client privilege applies to communications
seeking legal advice from registered non-attorney patent agents
"authorized to represent that client in an adversary process that

will substantially affect the legal rights of the client." In re Ampicillin Antitrust, 81 F.R.D. at 394; see also Mold-Masters Ltd. v. Husky Injection Molding Sys., Ltd., No. 01-1576, 2001 WL 1268587, at *4-*5 (N.D. Ill. Nov. 15, 2001); Vernitron Med. Prods., Inc. v. Baxter Labs., Inc., 186 U.S.P.Q. 324, 325-26 (D.N.J. 1975).  The communications to the patent agents, however, must involve knowledge, analysis, or application of patent law to be covered by the privilege.  See In re Ampicillin Antitrust, 81 F.R.D. at 394.

The attorney-client privilege also protects communications made to an attorney's agent where the communication is necessary for the client to obtain informed legal advice from the attorney. Westinghouse Elec. Corp. v. Republic of the Phil., 951 F.2d 1414, 1424 (3d Cir. 1991); see also Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.), 493 F.3d 345, 359, 361 (3d Cir. 2007) (stating that attorney-client privilege protects communications made between privileged persons, which includes attorney's agent who helps facilitate legal representation); In re Grand Jury Investigation, 918 F.2d 374, 386 n.20 (3d Cir. 1990) (stating that presence of attorney's agent does not vitiate attorney-client privilege).  The attorney-client privilege, however, does not apply to communications merely because they were made by or to an attorney's agent.  See Salvagno v. Borough of Glen Ridge, No. 08-2992, 2009 WL 2392887, at *2 (D.N.J. Aug.

3, 2009); see also United States v. Kovel, 296 F.2d 918, 921 (2d Cir. 1961) ("Nothing in the policy of the privilege suggests that attorneys, simply by placing accountants, scientists or investigators on their payrolls and maintaining them in their offices, should be able to invest all communications by clients to such persons with a privilege the law has not seen fit to extend when the latter are operating under their own steam.").

Communications, to be protected by the attorney-client privilege, must be made "to improve the comprehension of the communications between attorney and client"; that is, the third-party agent must act as a translator or interpreter of client communications for the attorney.  United States v. Ackert, 169 F.3d 136, 139-40 (2d Cir. 1999); see also La. Mun. Police Employees Ret. Sys. v. Sealed Air Corp., 253 F.R.D. 300, 312 (D.N.J. 2008) (stating that, to be protected by attorney-client privilege, agent "must evaluate the information and in a sense translate it into understandable terms for the non-expert attorney" (internal quotations omitted)); In re G-I Holdings Inc., 218 F.R.D. 428, 434-36 (D.N.J. 2003) (finding third-party agent not protected by attorney-client privilege where agent did not act as translator or facilitator of communications between attorney and client).

The communications with a third-party agent must also "be made in confidence for the purpose of obtaining legal advice from

the lawyer." Kovel, 296 F.2d at 922; see HPD Labs., Inc. v. Clorox Co., 202 F.R.D. 410, 414 (D.N.J. 2001); see also Sealed Air Corp., 253 F.R.D. at 312 (stating that to be protected by attorney-client privilege, agent's involvement "must be necessary to the lawyer's provision of legal advice"). If the advice sought is not legal advice or is advice from the agent, rather than the lawyer, then the attorney-client privilege does not apply. Kovel, 296 F.2d at 922; see HPD Labs., 202 F.R.D. at 415 (finding communications with paralegal were not protected by attorney-client privilege where paralegal's own advice, rather than advice of lawyer, was sought). Further, that the communication between the attorney and agent later proves helpful to the client's legal representations does not bring the communication within the scope of the attorney-client privilege. See Sealed Air Corp., 253 F.R.D. at 312; Cellco P'ship v. Certain Underwriters at Lloyd's London, No. 05-3158, 2006 WL 1320067, at *3 (D.N.J. May 12, 2006).

## II. Legal Standards Applied Here

DuPont argues that communications involving Charlotte Otto ("Otto"), an in-house, registered, non-attorney patent agent, should be protected by the attorney-client privilege. (DuPont 6-9-09 Letter at 2-5.) DuPont contends that the attorney-client privilege should be extended to communications involving Otto because she is a registered patent agent. (Id. at 4-5.) DuPont

also asserts that Thomas Magee ("Magee"), a registered patent attorney and in-house counsel for DuPont, supervises Otto's work on intellectual property matters, and the communications at issue were made for the purpose of obtaining legal advice. (<u>Id.</u> at 2-4.)

MacDermid argues that communications involving Otto are not privileged based on her status as a patent agent. (MacDermid 6-18-09 Letter at 2.) MacDermid asserts that any attorney-client privilege involving patent agents is limited to patent agents working under the authority and control of an attorney. (<u>Id.</u>) Here, MacDermid argues, Otto was not working under the control and authority of Magee or any other in-house counsel, and therefore communications involving Otto are not protected by the attorney-client privilege. (<u>Id.</u> at 2-4.)

The Court finds that communications between Otto and non-attorney DuPont personnel, including the inventors ("DuPont Personnel"), are not protected by the attorney-client privilege based on her status as a patent agent. There are three situations in which the attorney-client privilege has been extended to communications with non-attorney patent agents, none of which is present here. First, non-attorney patent agents have been protected by the attorney-client privilege where the patent agent was acting under the authority and control of an attorney. <u>See, e.g.</u>, <u>Cargill, Inc.</u>, 2003 WL 22225580, at *4-*5 (finding

communications between patent agent and attorney protected by
attorney-client privilege where non-attorney patent agent was
acting under instructions of, and assisting, attorney).

Otto, here, was not acting under the authority and control
of Magee, or any other attorney.[3]  In his deposition, Magee
testified that Otto is assigned to the business side and does not
report to him.  (DuPont 6-9-09 Letter, Ex. C, Magee Dep. 12:4-7,
12:13-15, Oct. 17, 2008.)[4]  Rather, Otto acts as "an intermediate
support person for intellectual property matters for the
business."  (Id. 12:5-7.)  Magee testified that he supervises
Otto from a functional standpoint, meaning that he reviews the
duties she performs and she feeds information to him.  (Id.
12:20-13:4.)  Also, Magee and Otto are "jointly . . . involved in
preparation of any patent application," including drafting the
patent application.  (Id. 13:5-6, 14:14-17.)  This does not
establish that Otto was acting under Magee's authority and

_____

[3]  In making determinations about the applicability of the
attorney-client privilege to the documents submitted for review,
the Court relies on a list of DuPont legal personnel provided by
DuPont.  (See Dupont 6-9-09 Letter, Ex. B, Personnel List.)
DuPont has not identified anyone other than those listed on the
Personnel List, both in-house counsel and outside litigation
counsel, as being an attorney.

[4]  DuPont has not submitted anything from Otto explaining
her job function and responsibilities.  The only evidence
submitted relative to Otto's job function and responsibilities
was excerpts from Magee's deposition transcript.  (See DuPont 6-
9-09 Letter.)

control.  Otto works in a wholly separate part of the company -
the business side - than does Magee and does not directly report
to Magee.  (Id. at 12:4-7, 12:13-15.)  While Otto and Magee work
together to prepare patent applications, there is no indication
that Otto works under Magee's control and authority.  (See id. at
13:4-14:17 (stating that Magee and Otto are "jointly . . .
involved," not that Otto works for Magee or at his direction, in
preparing patent applications).)  Outside of the preparation of
patent applications, there is no indication that Otto works for,
or even with, Magee.  Further, many of the documents at issue
involve communications between Otto and DuPont Personnel, with no
indication that the information contained therein was ever
transmitted to Magee.  (See, e.g., DuPont 6-8-09 Letter,
Documents 1-5.)  Thus, the Court concludes that DuPont has not
shown that Otto works under the control and authority of Magee,
such that the attorney-client privilege applies to communications
with or involving Otto based on her status as a non-attorney
patent agent.  See Gorman, 137 F.Supp.2d at 227-28; Willemijn
Houdstermaatschaapij BV, 707 F.Supp. at 1446.

        The second situation in which the attorney-client privilege
has been extended to non-attorney patent agents is where the
patent agent is presenting and prosecuting a patent application
before the United States Patent and Trademark Office.  See, e.g.,
Polyvision Corp., 2006 WL 581037, at *3 (finding communications

between client and non-attorney patent agent regarding patent application protected by attorney-client privilege). That is not the situation here. The '758 Patent was prosecuted by 3M Company, and there is no indication in the documents that Otto had any involvement in the presentation and prosecution of the '758 Patent. (See dkt. entry no. 77, 3-1-06 Decl. of James Mahanna, Ex. 10, File Wrapper for '758 Patent (identifying Susan Moeller Zerull of 3M Company's Office of Intellectual Property Counsel as individual presenting and prosecuting '758 Patent).) Magee presented and prosecuted the '859 Patent. (See dkt. entry no. 46, 11-20-06 Decl. of James Mahanna, Ex. 2, File Wrapper for '859 Patent (identifying Magee as individual presenting and prosecuting '859 Patent).) Further, the documents containing communications between Otto and DuPont Personnel do not indicate that they were related to, or contain information necessary for, the presentation and prosecution of the '859 Patent. Thus, the Court finds that communications between Otto and DuPont Personnel were not made for the purpose of presenting and prosecuting a patent application, and therefore they are not protected by the attorney-client privilege. See John Labatt Ltd., 898 F.Supp. at 474-75 (limiting application of attorney-client privilege to non-attorney patent agents to situations where patent agent is presenting and prosecuting patent application).

The final situation in which the attorney-client privilege has been extended to non-attorney patent agents is when a registered patent agent is authorized to represent a client in an adversary process that substantially affects the client's rights. See, e.g., In re Ampicillin Antitrust, 81 F.R.D. at 394. Here, there is no indication that Otto was authorized to represent DuPont in an adversary process. Rather, it was Magee who presented and prosecuted the patent application for the '859 Patent. (See File Wrapper for '859 Patent.) The Court therefore finds that communications between Otto and DuPont Personnel are not covered by the attorney-client privilege on this basis. Because none of the situations in which the attorney-client privilege has been extended to cover non-attorney patent agents is present here, the Court concludes that communications between Otto and DuPont Personnel are not protected by the attorney-client privilege based on Otto's status as a patent agent.

The Court also finds that communications between Otto and DuPont Personnel are not protected by the attorney-client privilege under the theory that Otto acted as Magee's agent. Otto did not directly report to Magee, but she did work with him, as opposed to for him or under his authority, to prepare and draft patent applications. (See Magee Dep. 12:4-7; 13:8-14:17.) That Otto worked with Magee, however, does not mean that Otto's communications with DuPont Personnel are privileged. See HPD

Labs., 202 F.R.D. at 417 ("A non-lawyer's statements do not
automatically become privileged simply because, at some point,
that person interacted with or learned from an attorney."); see
also Salvagno, 2009 WL 2392887, at *4 (stating that attorney-
client privilege does not apply to every statement made by
attorney's agent).  Rather, it is Otto's activities that
determine whether the privilege applies.  See HPD Labs., 202
F.R.D. at 417.

     The documents containing communications between Otto and
DuPont Personnel, however, give no indication that they are
related to the preparation of a patent application, or that the
information contained therein was transmitted for the purpose of
obtaining legal advice from Magee.  See Kovel, 296 F.2d at 922
(emphasizing that to be protected, communication must have been
made for purpose of obtaining legal advice from attorney).  There
is no indication in the documents that Otto was gathering the
information contained therein at Magee's request, or that the
information was ever relayed to Magee.  See HPD Labs., 202 F.R.D.
at 415, 418 (emphasizing that paralegal did not relay, or
discuss, challenged communications with attorney and concluding
that communications between paralegal and client were not
privileged).  There is also no indication in the documents that
Otto, through her communications with DuPont Personnel, conveyed
legal advice from Magee to other DuPont Personnel.  See id. at

14

416, 418 (finding that paralegal did not pass along legal advice
from attorney to client in determining that communications were
not covered by attorney-client privilege).  Further, several of
the communications were made to Otto for the purpose of obtaining
her own advice, not that of Magee.  See id. at 415 (finding that
communications seeking advice of paralegal, not lawyer, were not
protected by attorney-client privilege).  The Court therefore
concludes that communications between Otto and DuPont Personnel
are not protected by the attorney-client privilege under the
theory that Otto is Magee's agent.  See id. at 415-18.

      Documents 1-12, 14-17, 19, 22, 30, 31, 32, 35, 36, 38, 39,
71, 72, 73, 74, 75, 76, 77, 78, and 85 contain communications
between Otto and DuPont Personnel.  (See DuPont 6-8-09 Letter.)
These communications do not directly involve an attorney; that
is, they are neither authored by, nor addressed to, an attorney.
There is also no indication that the communications contained in
these documents were made at the request of, or in response to,
an attorney, or that the communications were ever conveyed to an
attorney.  See HPD Labs., 202 F.R.D. at 415-18.  DuPont asserts
that the documents are privileged based on Otto's involvement,
her work with Magee, and her status as a registered patent agent.
(See DuPont 6-9-09 Letter at 2-5.)  However, the Court, as
discussed above, has already concluded that, here, communications
between Otto and DuPont Personnel are not protected by the

attorney-client privilege.  Since this is DuPont's only basis for asserting the attorney-client privilege as to these documents, the Court finds these documents are not privileged and must be produced to MacDermid.[5]

Documents 21, 21A, 25, 34, 37, 41, 43, 44, 45, 47, 48, 49, 53, 57, 58, 59, 60, 61, 63, 79, 87, 87A, 90, and 90A contain communications between DuPont Personnel and Magee, or another identified attorney representing DuPont.  (See DuPont 6-8-09 Letter.)  The communications within these documents were made by DuPont Personnel to an attorney for the purpose of obtaining legal advice from the attorney, or from an attorney to DuPont Personnel for the purpose of providing legal advice to the client.  The Court therefore finds that these documents are protected by the attorney-client privilege and do not need to be produced.

The Court cannot determine if documents 13, 18, 20, 26, 27, 29, 33, 46, 50, 51, 52, 54, 56, 64, 65, 66, 67, 68, 70, 80, 81,

---

[5]  Document 62 is a declaration of Mark A. Hackler, an inventor of the '859 Patent.  Documents 69, 82, and 83 are communications that do not involve Otto.  These documents are not privileged because there is no indication that they involved a DuPont attorney, were made at the request of, or in response to, a DuPont attorney, or were made for the purpose of obtaining legal advice from a DuPont attorney.  See In re Spalding Sports, 203 F.3d at 805.  Document 89 is a communication between a DuPont attorney and a third-party.  This document is not protected by the attorney-client privilege because it is not a communication between a client and attorney made for the purpose of obtaining legal advice from the attorney.  See id.

84, and 86 are protected by the attorney-client privilege.  These documents lack, among other information, either an identified author, recipient, or both.  Further, statements in DuPont's privilege logs that particular documents, such as these, were prepared at the request of counsel without specifically naming the requesting attorney are not helpful here because DuPont, in the privilege logs, refers to Otto as counsel.  (See MacDermid 6-18-09 Letter, Exs. A-D, DuPont Privilege Logs.)  Otto is not an attorney.  (See DuPont 6-9-09 Letter at 2; MacDermid 6-18-09 Letter at 2.)  The Court cannot tell if DuPont, in referring to "counsel," means Otto or another person who actually is an attorney.  (See DuPont Privilege Logs.)[6]  The Court, therefore, will not require production of these documents at this time, but will direct DuPont to submit a revised privilege log specifically identifying each document's author, recipient, purpose, and, if applicable, the name of the attorney who requested the information contained in the communication.

_____

[6]  DuPont's descriptions of the documents in its June 9, 2009 Letter are also unreliable.  For example, DuPont characterizes document 8 as a request for legal advice from DuPont Legal.  (See DuPont 6-9-09 Letter at 6.)  However, none of the individuals listed as addressees on the email are identified as members of "DuPont Legal Personnel" or "Outside Litigation Counsel" on the Personnel List submitted by DuPont.  (See Personnel List.)

**IT IS THEREFORE** on this    17th    day of September, 2009,

**ORDERED** that the Court finds that documents 1-12, 14-17, 19, 22, 30, 31, 32, 35, 36, 38, 39, 62, 69, 71, 72, 73, 74, 75, 76, 77, 78, 82, 83, 85, and 89 are not protected by the attorney-client privilege and must be produced; and

**IT IS FURTHER ORDERED** that the Court finds that documents 21, 21A, 25, 34, 37, 41, 43, 44, 45, 47, 48, 49, 53, 57, 58, 59, 60, 61, 63, 79, 87, 87A, 90, and 90A are protected by the attorney-client privilege and do not have to be produced; and

**IT IS FURTHER ORDERED** that the plaintiff is **DIRECTED** to submit, within 20 days of entry of this Memorandum Opinion and Order, a revised privilege log, which specifically identifies the author, recipient, purpose, and, if applicable, name of the attorney who requested the information contained in the communication, with regard to documents 13, 18, 20, 26, 27, 29, 33, 46, 50, 51, 52, 54, 56, 64, 65, 66, 67, 68, 70, 80, 81, 84, and 86.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

18