UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

(609) 989-2040

CHAMBERS OF
TONIANNE J. BONGIOVANNI
UNITED STATES MAGISTRATE JUDGE

U.S. COURTHOUSE
402 E. STATE STREET, RM 6052
TRENTON, NJ 08608

August 4, 2011

**LETTER OPINION & ORDER**
**(Filed under Temporary Seal)**

Re:    **E.I. DuPont de Nemours and Company v. MacDermid Printing Solutions, L.L.C.**
**Civil Action No. 06-3383 (MLC)**

Dear Counsel:

Pending before the court is Defendant MacDermid Printing Solutions, L.L.C.'s ("MacDermid")

request that the Court conduct an *in camera* review of various documents subject to privilege claims by

Plaintiff E.I. DuPont de Nemours and Company ("DuPont") to determine whether the crime-fraud

exception to the attorney-client privilege applies.  Initially, MacDermid asked the Court to review

approximately 250 documents listed on DuPont's privilege log.  In its supplemental briefing,

MacDermid expanded its request for *in camera* review to also include "all documents that concern: (1)

DuPont's evaluation of the patent ability of digital-thermal, (2) its public disclosure of the concept, (3)

the Rule 131 affidavit and its contention that an 'invention' was completed on or about June 9, 1999, (4)

the Agfa Opposition, (5) MacDermid's patents, '500 and '410, (6) MacDermid's CBU product, (7) the

'761 patent, (8) ███████████████████, (9) the 1999 CMM tradeshow, and (10) DuPont's

concealing the best mode." (MacDermid's 12/6/10 Supp. Ltr. Br. at 36.)  The Court has reviewed and

considered the arguments raised in the parties' initial briefing on this matter as well as those raised

during the November 18, 2010 hearing and in the parties' supplemental briefs.  Given the Court and the

parties' familiarity with this issue and with the parties' arguments in support of and in opposition to

same, the Court does not restate either at length herein.  For the reasons set forth more fully below, MacDermid's request for an *in camera* review is denied.

## I.   Analysis

### A.   Standard of Review

"[T]he purpose of the crime-fraud exception to the attorney-client privilege [is] to assure that the 'seal of secrecy[]' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *U.S. v. Zolin*, 491 U.S. 554, 563, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (citations omitted).  In order to successfully invoke the crime-fraud exception, "a party challenging the attorney-client privilege must make a *prima facie* showing that the communication was made 'in furtherance of' a crime or fraud." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000).

Common law fraud, also known as *Walker Process* fraud, only exists where the following five elements are met:

> (1) a representation of a material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation.

*Id.* (quoting *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1069-70 (Fed. Cir. 1998)) (internal quotation marks omitted).  As a result, a party seeking to overcome the attorney-client privilege based on the crime-fraud exception, must make a *prima facie* showing that each of the aforementioned elements are met.  Further, while such a party need not conclusively prove fraud or even necessarily submit direct evidence to make a *prima facie* case, the party does need to present clear evidence that the five elements exist.  As such, where a party attempts to invoke the crime-fraud exception to the attorney-client privilege based on its adversary's "'failure to cite a piece of prior art . . ., the withholding reference

2

must show evidence of fraudulent intent. A mere failure to cite a reference to the PTO will not suffice.'" *Id.* (quoting *Nobelpharma*, 141 F.3d at 1070-71). In this regard, common law fraud is different from inequitable conduct, which "'in fact is a lesser offense than common law fraud, and includes types of conduct less serious than 'knowing and willful' fraud.'" *Id.* (quoting *Nobelpharma*, 141 F.3d at 1069-70). Unlike inequitable conduct, which can be found based on "'an equitable balancing of lesser degrees of materiality and intent[,]' a finding of *Walker Process* fraud "'must be based on independent and clear evidence of deceptive intent together with a clear showing of reliance[.]'" *Id.* (quoting *Nobelpharma*, 141 F.3d at 1070-71).

The Court finds that MacDermid has not established a *prima facie* case of *Walker Process* fraud. The question that remains, and which was the subject of the parties' supplemental briefing, is whether the Court, as requested by MacDermid, should conduct an *in camera* review of various documents subject to privilege claims by Dupont before rejecting MacDermid's attempt to invoke the crime-fraud exception to the attorney-client privilege.

As the Supreme Court found in *Zolin*, the evidentiary showing needed to trigger *in camera* review is less than that required to ultimately overcome the attorney-client privilege. Recognizing that, the evidentiary showing "need not be a stringent one[,]" the Supreme Court set forth the following standard with respect to *in camera* review:

> Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.

*Zolin*, 491 U.S. at 572. While the evidence presented to establish such a factual basis need not be extensive and may include "any nonprivileged evidence" in the parties' possession, in order to establish a good faith reasonable belief that *in camera* review of the materials may yield evidence that establishes the applicability of the crime-fraud exception, the party opposing the privilege must present some

3

evidence outside of the privileged documents and the evidence presented must bear on all of the five elements of *Walker Process* fraud.[1]  *Id.* at 574.

Further, even after a party establishes a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies, the decision whether to engage in an *in camera* review rests in the sound discretion of the district court." *Id.* at 572.  In determining whether to exercise its discretion and engage in an *in camera* review, the Court considers factors such as:

> the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply.

*Id.*

Here, the Court finds that MacDermid has not met the threshold showing necessary to warrant the Court's *in camera* review of DuPont's privileged documents.

**B.    Alleged Material Misrepresentations and/or Omissions**

**1.    MacDermid's Arguments Regarding Allegedly Misrepresented and/or Concealed Material Information**

In support of its request for an *in camera* review, MacDermid points to the following two alleged material misrepresentations: by filing the patent application for the '859 patent, (1) the inventors of same represented to the PTO that they had "invented" the subject matter claimed therein knowing that the

---

[1]To be clear, this is not meant to suggest that the party opposing the application of the attorney-client privilege present "independent" evidence on all five elements of *Walker Process* fraud.  Consistent with the Supreme Court's holding in *Zolin*, to the extent the party seeking application of the crime-fraud exception has access to some nonprivileged form of the contested communications, it can rely on same in making its showing that *in camera* review is warranted and, under appropriate circumstances, the party could succeed in obtaining *in camera* review even if that were the only evidence presented.  491 U.S. at 574.  However, a party seeking to obtain *in camera* review cannot rely on the privileged versions of the communications at issue to establish that *in camera* review is warranted.  *Id.*

claimed subject matter was not patentable; and (2) the inventors represented that they complied and

would continue to comply with the duty to disclose all information known to be material to patentability

as defined in 37 C.F.R. § 1.56.  MacDermid relies on various pieces of evidence to support these two

claims.

For example, with respect to its claim that the inventors of the '859 patent knew that the subject

matter claimed therein was not patentable, MacDermid points to (1) a memorandum dated June 23, 1999

that was written by DuPont's patent agent and sent to the patent committee which (a) noted that DuPont



; and (b) suggested

that DuPont disclose

; (2) an internal DuPont report from March

2000 which indicated that

; and (3) an internal DuPont report from April 2000 which

noted that

MacDermid argues that these

internal records contradict DuPont's Rule 131 affidavit and accompanying response, which represent

that DuPont's invention was completed on or about June 6, 1999 and establish that the

MacDermid further claims that as

DuPont's patent agent revealed, DuPont was commercially motivated to secure a patent on the digital-

thermal combination and therefore filed the patent application despite knowing that the subject matter

claimed in the '859 patent was not patentable.

With respect to MacDermid's allegation that the inventors failed to disclose all known

information material to the patentability of the subject matter claimed in the '859 patent, MacDermid

relies on the following allegedly concealed material information:  (1) DuPont's Agfa Opposition and its

contents; (2) DuPont's public disclosure of the digital-thermal concept and the existence of the '500 and

'410 patents; (3) MacDermid's CBU products; (4) the '761 patent; and (5) that the best mode for

carrying out the "invention" claimed in the '859 patent was to use ██████████████████████

███████ The Court briefly summarizes MacDermid's arguments regarding the materiality of the

aforementioned information.

### (1)   DuPont's Agfa Opposition

MacDermid argues that Agfa's patent, which was filed in Europe before the EPO, had claims that

included the formation of a "digital mask" (*i.e.*, claim 5, which involved a process for creating a

flexographic printing plate that broadly included a digital-thermal process). (MacDermid's 12/6/10

Supp. Ltr. Br. at 21). Indeed, MacDermid argues that Agfa's patent claimed the "very same

digital/thermal combination which DuPont was required to swear behind in the USPTO." (*Id.* at 24).

MacDermid argues that despite the fact that DuPont had to swear behind the same digital-thermal

combination claimed in the Agfa patent, DuPont made efforts to and succeeded in getting the Agfa

patent revoked. In so doing, MacDermid notes that DuPont relied on the '500 patent, which MacDermid

claims is the only reference that contains a teaching concerning a digital plate and a teaching regarding

thermal development within the four corners of the document; yet DuPont did not disclose the '500

patent to the USPTO. MacDermid argues that the result of DuPont's efforts was "something egregious"

- DuPont succeed in having the Agfa patent revoked and obtaining the '859 patent by making

inconsistent arguments before the EPO and USPTO and concealing the arguments made in opposition to

the Agfa patent from the USPTO. (*Id.*)

### (2)   DuPont's Public Disclosure of the Digital-Thermal Concept and the '500 and '410 Patents:

MacDermid claims that despite having publicly disclosed the concept of digital-thermal in the

Summer 1999 FAST Newsletter and other trade magazines, DuPont did not disclose these publications

to the USPTO. MacDermid claims that these publications should have been disclosed because they act as bars to the patentability of the '859 patent. MacDermid also argues that DuPont failed to disclose the '500 and '410 patents, which were material references that were part of the prior art that made it difficult to patent the broad concept of digital-thermal. As already noted, DuPont relied on the '500 patent to oppose Agfa's patent in the EPO. As a result, MacDermid claims that any attempt by DuPont to argue that the '500 patent is cumulative is "without merit." (*Id.* at 23, n. 7).

### (3)   MacDermid's CBU Products:

MacDermid contends that prior to March 6, 2000, it sold a plate that contained a digital layer with a meltable binder, its CBU product. MacDermid claims that DuPont concealed MacDermid's CBU product from the USPTO despite the fact that an internal DuPont document noted that ███████████

████████████████████████████████████████████████████████████

### (4)   The '761 Patent:

MacDermid argues that DuPont also failed to disclose the '761 patent to the USPTO. MacDermid claims that Dr. Fan, one of the named inventors of the '859 patent, reviewed the '761 patent on November 11, 2000, prior to the filing of the application for the '859 patent on March 6, 2001. MacDermid argues that the '761 patent is the only 3M patent that DuPont did not disclose to the USPTO and argues that it is material because (a) the '761 patent is the only 3M patent that teaches that the same plate, after being imagewise exposed to actinic radiation, can be alternatively developed with solvents or by heat, *i.e.*, it established that existing plates could alternatively be developed by heat, making the digital-thermal combination an obvious, nonpatentable step; and (b) the '761 patent teaches that the layer above the photopolymerizable layer can also be alternatively removed by solvents or heats, which demonstrates that a digital plate with a carbon black digital layer could be thermally developed even though that plate contained particles of vanadium oxide.

(5)   Best Mode:

MacDermid claims that DuPont failed to inform the USPTO that ███████████████████

███████ worked best in the thermal processor and thereby concealed both the best mode for practicing the

subject matter claimed in the '859 patent in violation of §112 as well as the fact that the claimed

invention was obvious and unpatentable. To support its argument that DuPont knew that the best mode

for carrying out the claimed invention was ████████████████████████████, MacDermid

relies on the following evidence: (a) Dr. Fan, one of the inventors of the '859 patent, recommended that

████████████████████████████; (b) Dr. Kannurpatti, another inventor of the '859 patent,

reported to DuPont's technology director and various business leaders that ████████████████████

████████████████████████████; and (c) in the Phase III review, Dr. Kannurpatti

recommended ████████████████████████.

**2.   Discussion**

On their face, MacDermid's arguments appear to provide a factual basis adequate to support a

good faith belief by a reasonable person that DuPont concealed material information from the USPTO

and, through the inventors of the '859 patent, materially misrepresented that (1) the subject matter

claimed in the '859 patent had been "invented" knowing all the while that the claimed invention was not

patentable; and (2) that all information known to be material to patentability as defined in 37 C.F.R. §

1.56 had been disclosed. The Court, however, is not obligated to take MacDermid's arguments at face

value. Nor is the Court obligated to view the facts in the light most favorable to MacDermid. Instead,

MacDermid bears the burden of establishing that *in camera* review of DuPont's documents is warranted.

MacDermid has not met that burden. When MacDermid's arguments concerning the materiality of

allegedly misrepresented and concealed information are subject to even minimal scrutiny, gaping holes

arise that make it unreasonable to believe that an *in camera* review of DuPont's documents may reveal

evidence to establish the application of the crime-fraud exception of the attorney client privilege.

For example, with respect to DuPont's internal documents, the broad statements contained therein regarding ████████████████████████████████████████ do not, as MacDermid claims, establish that the inventors of the '859 patent knew that their invention was not patentable. First, the '859 patent does not simply claim the digital-thermal combination, but instead, as DuPont points out "claims a specific process that requires a flexographic printing element having specific structural limitations." (DuPont's 1/10/11 Supp. Ltr. Br. at 11). Second, the generic statements contained in the internal reports relied on by MacDermid make no reference to any of the specific claims of the '859 patent, nor do they discuss the scope of the relevant prior art. As such, they certainly do not address the patentability of the specific claims of the '859 patent in light of the existing relevant prior art. Without such a discussion, it would be entirely unreasonable to conclude that DuPont's internal reports establish that the inventors of the '859 patent knew that they were seeking to obtain a patent on unpatentable claims. Further, the Court is unpersuaded by MacDermid's argument that DuPont was commercially motivated to secure a patent. In this Court's experience, all patent holders are commercially motivated to secure patent rights and that motivation is not indicative of fraud.

Similarly, with respect to DuPont's Agfa Opposition, MacDermid never addresses whether that opposition actually qualifies as material information that DuPont would have a duty to disclose, but instead, without reference to any case law, assumes that it is. This is problematic because the Federal Circuit has intimated that the details of foreign prosecutions are not in and of themselves an additional category of material information. *See ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998). As the Federal Circuit stated in *Lydall*:

> Although international search reports may contain information material to patentability if they contain closer prior art than that which was before the United States examiner, it is the reference itself, not the information generated in prosecuting foreign counterparts, that is material to prosecution in the United States. The details of foreign prosecution are not an additional category of material information.

9

*Id.* As a result, the Court has serious concerns about relying on DuPont's failure to disclose its Agfa

Opposition as a basis to conduct an *in camera* review of DuPont's documents.

However, even if the Court assumed that DuPont's Agfa Opposition qualified as a potential

category of material information, MacDermid would still have to demonstrate the materiality of that

opposition.  Pursuant to 37 C.F.R. § 1.56, a reference is material:

> when it is not cumulative to information already of record in the
> application, and (1) It establishes by itself or in combination with other
> information, a prima facie case of unpatentability of a claim; or (2) It
> refutes, or is inconsistent with, a position the applicant takes in: (ii)
> Opposing an argument of unpatentability relied on by the Office, or (ii)
> Asserting an argument of patentability.

Here, MacDermid has failed to establish the materiality of the Agfa Opposition under 37 CFR §

1.56.  With respect to 37 CFR § 1.56(1), MacDermid has not established how Dupont's Agfa Opposition

establishes a *prima facie* case of unpatentability.  MacDermid broadly argues that the Agfa patent

claimed the "very same digital/thermal combination" that DuPont was required to swear behind in the

USPTO, but MacDermid provides no evidence to support this claim.  (MacDermid's 12/6/10 Supp. Ltr.

Br. at 24).  MacDermid does not outline the claims of the Agfa and '859 patents or make any direct,

specific comparisons between them.  MacDermid does not address DuPont's argument that the claims

contained in the Agfa patent are distinctly different from those prosecuted in the '859 patent.  Nor does

MacDermid address the Magee Declaration relied on by DuPont to show that DuPont's Agfa Opposition

pertained only to the patentability of the claims raised in the Agfa patent under European patent law.

Everything considered, the Court is not overly impressed by the argument that DuPont's Agfa

Opposition establishes a *prima facie* case of unpatentability of the claims protected by the '859 patent.

Likewise, the Court finds that MacDermid has not established that DuPont's Agfa Opposition is

inconsistent with a position taken by DuPont in either opposing an argument of unpatentability relied on

by the USPTO or asserting an argument of patentability.  While MacDermid refers to "inconsistent

arguments" made by DuPont to the EPO, MacDermid provides no details regarding the allegedly

inconsistent arguments. (*Id.*) Indeed, no explanation is provided concerning how DuPont's arguments

made to the EPO were inconsistent with positions taken by DuPont before the USPTO. Further, it does

not appear that DuPont ever actually opposed an argument of unpatentability in the USPTO. As a

result, the Court has virtually no basis upon which to find that the Agfa Opposition is material under 37

C.F.R. § 1.56(2).[2]

Under these circumstances, the Court finds that it would be unreasonable to rely on DuPont's

Agfa Opposition to determine that an *in camera* review of DuPont's documents is warranted. Simply

put, even if the Court assumes that the Agfa Opposition represents a potential category of material

information, MacDermid has not, in the context of this motion, met its burden of establishing materiality

under 37 CFR § 1.56.

In addition, MacDermid's arguments regarding DuPont's public disclosure of the digital-thermal

combination and failure to disclose the '500 and '410 patents also break down. MacDermid claims that

DuPont publicly disclosed the concept of the digital-thermal combination in several publications over

one year prior to the date it applied for the '859 patent. As a result, MacDermid also claims that

DuPont's '859 patent was barred by 35 U.S.C. § 102(b). MacDermid relies on DuPont's failure to

disclose these alleged bars to the patentability of the '859 patent as evidence of fraud.

Under 35 U.S.C. § 102(b), a bar to patentability only exists if "the invention was . . . described in

a printed publication in this or a foreign country . . . more than one year prior to the date of the

---

[2]MacDermid's largest complaint regarding DuPont's Agfa Opposition appears to be that
DuPont relied on the '500 patent in obtaining revocation of the Agfa patent but never disclosed that
patent to the USPTO while prosecuting the '859 patent. The '500 patent clearly qualifies as a
potential category of material information. This specific reference, and DuPont's alleged failure to
disclose same, however, represents something distinctly different from DuPont's alleged failure to
disclose its Agfa Opposition in its entirety. The Court addresses the '500 patent and DuPont's
alleged failure to disclose same in detail below.

application for patent in the United States[.]" To be anticipatory under § 102(b), "a reference must describe, either expressly or inherently, each and every claim limitation and enable one of skill in the art to practice an embodiment of the claimed invention without undue experimentation." *American Calcar, Inc. v. American Honda Motor Co., Inc.*, -- F.3d --, 2011 WL 2519503, *16 (Fed. Cir. June 27, 2011). Nowhere, however, does MacDermid describe how the references it relies on (*i.e.* the Summer 1999 FAST Newsletter and other trade magazines) describe each and every claim limitation of the '859 patent. Instead, MacDermid broadly and generically states that the references disclosed the digital-thermal concept. MacDermid's arguments are entirely insufficient and do not come close to establishing a bar to patentability under § 102(b)..

MacDermid also asserts that DuPont failed to disclose the '500 and '410 patents during its prosecution of the '859 patent, despite the fact that DuPont relied on the '500 patent to defeat the Agfa patent in the EPO and despite the fact that both patents were among the prior art references that formed DuPont's belief that the digital-thermal combination was obvious and not patentable. MacDermid, however, does not substantively address DuPont's claim that in the context of the prosecution of the '859 patent, the '500 patent is cumulative of the following other digital flexography patents disclosed by DuPont to the USPTO: U.S. Patent No. 5, 262,275 (the "'275 patent") and EP 0741330 (the "EP '330 patent"). Instead, MacDermid largely chooses to ignore DuPont's argument regarding the cumulative nature of the '500 patent. In fact, MacDermid argues that DuPont's claim that the '500 patent is cumulative of other disclosed prior art is "without merit" without even mentioning, much less addressing in any detail, the '275 or EP '330 patents. (MacDermid's 12/6/10 Supp. Ltr. Br. at 23).

Indeed, MacDermid's sole basis for claiming that DuPont's argument is without merit is that the '500 patent is "the only reference that contained a teaching concerning a digital plate and a teaching regarding thermal development within the four corners of the document." (*Id.* at 22-23). MacDermid's reasoning in this regard, however, is a *non sequitur* because the '500 patent's teaching regarding thermal

Case 3:06-cv-03383-MLC-TJB   Document 384 *SEALED*   Filed 08/05/11   Page 13 of 22
PageID: 10158

development pertains only to existing development options for analog-imaged flexographic printing elements; as the District Court concluded over two and a half years ago, the '500 patent does not include a teaching disclosing thermal development of digital plates. (*See* 11/14/08 Mem. Op. at 57-58; Docket Entry. No. 192).

MacDermid bears the burden of proof on this application. Given MacDermid's decision to disregard DuPont's arguments regarding the '275 and EP '300 patents coupled with the fact that the '500 patent does not include a teaching that discloses thermal development of digital plates, MacDermid has failed to establish a basis upon which the Court could reasonably use DuPont's failure to disclose the '500 patent to the USPTO as a ground for conducting an *in camera* review of DuPont's privileged documents.

Further, MacDermid's argument concerning DuPont's failure to disclose MacDermid's CBU product is also problematic. MacDermid never explains why its CBU product, which "had a digital layer with a meltable Macromelt binder" (MacDermid Br. at 27), is not cumulative of DuPont's DPH digital plate, which "had a 'digital layer' comprising carbon black and Macromelt 6900 and could be thermally processed in an existing thermal processor" and which DuPont disclosed in the specification of the '859 patent. (DuPont's 1/10/11 Supp. Ltr. Br. at 17-18). The Court understands that MacDermid's CBU product represents a competitor's commercially available product. MacDermid, however, does not explain why this detail is legally important. Indeed, MacDermid cites no law to suggest that MacDermid's CBU product would not be cumulative of DuPont's DPH digital plate because MacDermid's product is a competitor's product. As a result, MacDermid has failed, in the instant motion, to convince the Court that its CBU product is a non-cumulative reference that DuPont should have disclosed to the USPTO while prosecuting the '859 patent. Consequently, DuPont's nondisclosure of MacDermid's CBU product does not support the requested *in camera* review.

Similarly, MacDermid's arguments concerning the '761 are also deficient. Again, MacDermid

fails to adequately address why the '761 patent is not cumulative of other prior art disclosed to the

USPTO. With respect to the '761 patent, MacDermid first argues that DuPont "selectively concealed"

the '761 patent because it "is the only 3M patent that teaches that the same plate, after being imagewise

exposed to actinic radiation, can be *alternatively* developed with solvents or by heat." (MacDermid's

12/6/10 Supp. Ltr. Br. at 28 (emphasis in original)). MacDermid further contends that "[t]his teaching of

the '761 patent is highly material to the '859 patent because it demonstrates that existing digital plates

(which had been solvent development) could alternatively be developed by heat. This fact makes the

combination of digital and thermal an obvious, nonpatentable step, ████████████████████

████████████." (*Id.*) In support of this argument, MacDermid identifies the following

language from the '761 patent:

> The plate is imagewise irradiated to harden the radiation curable
> (hardenable) composition in irradiated areas. **Said imagewise irradiated
> layer may then be wash developed *or* preferably contacted with an
> absorbent layer which can absorb (or wick) unradiated composition
> when the composition has been heated between 40° C and 200° C.**

(*Id.* (quoting '761 patent, 8:7-10) (emphasis added by MacDermid)).

MacDermid, however, never addresses the fact that a near identical teaching is contained in U.S.

Patent No. 5,215,859 (the "3M '859 patent") or the fact that DuPont, in prosecuting the '859 patent,

disclosed the 3M '859 patent to the USPTO. In pertinent part, the 3M '859 patent teaches:

> The process of the present invention for producing a flexographic printing
> plate comprises . . . imagewise irradiating said composition to harden the
> composition in irradiated areas, developing said image formed by
> hardened composition by wet wash-off development or contacting said
> imagewise irradiated layer with an absorbent layer which can absorb
> unirradiated composition when it has been heated between 40° and 200°
> C.

(DuPont's 1/10/11 Supp. Ltr. Br. at 16 (quoting 3M '859 patent, 5:25-37)). MacDermid's failure to

address the 3M '859 patent in its supplemental briefing is perplexing. Without some explanation from

14

MacDermid concerning why DuPont's disclosure of the 3M '859 patent does not render this teaching of the '761 patent cumulative, the Court cannot at this juncture credit MacDermid's argument that the '761 patent is a material reference improperly concealed by DuPont.

MacDermid also argues that the '761 patent is material because it teaches that "the layer *above* the photopolymerizable layer can also be alternatively removed by solvents or heat" even though this layer contains particles of vanadium oxide, which, like carbon black in a digital layer, is not meltable. (MacDermid's 12/6/10 Supp. Ltr. Br. at 29 (emphasis in original)).  As such, MacDermid, claims that the '761 patent is "highly material to the '859 patent because it demonstrates that a digital plate with a carbon black digital layer could be thermally developed[:]

> The particles [of vanadium oxide] should be removable in uncured areas of the plate by wash-off development or by being carried along with wicked uncured photohardenable elastomer.

(*Id.* (quoting '761 patent, 47:35-40)).  MacDermid's argument, in this regard, is newly raised.

DuPont does not concede that the above-referenced teaching of the '761 patent, standing alone, is actually material to the claims of the '859 patent.  Nevertheless, DuPont argues that in prosecuting the '859 patent it included a prior art reference to the USPTO that disclosed "the presence of vanadium oxide in a top layer that could be thermally developed."  (DuPont's 1/10/11 Supp. Ltr. Br. at 17). Specifically, DuPont claims that EP 0665471 (the "EP '471 patent") "disclosed that the release layer may further comprise an antistatic agent" and that one such antistatic agent is vanadium pentoxide, an embodiment of vanadium oxide  (*Id.*)  Consequently, DuPont argues that the aforementioned teaching of the '761 patent is cumulative of information before the USPTO.

MacDermid does not address the EP '471 patent or whether that patent renders the aforementioned teaching of the '761 patent cumulative.  This is likely true because DuPont was responding to a newly raised argument by MacDermid.  Nevertheless, the EP '471 patent does raise questions regarding the materiality of the aforementioned teaching of the '761 patent, making it difficult

to rely on this portion of the '761 patent to determine that an *in camera* review of DuPont's privileged documents is warranted.

Finally, MacDermid argues that in violation of 35 U.S.C. § 112, DuPont, improperly concealed that the best mode for carrying out the invention claimed in the '859 patent was to use ███████████ ███████████████████ in the thermal processor and that, as such, the claimed invention was obvious and not patentable. In this regard, MacDermid points to the fact that one of the named inventors of the '859 patent, Dr. Fan, whose work involved identifying ████████████████████████ ███████████████████████████████████████" (MacDermid's 12/6/10 Supp. Ltr. Br. at 29 (quoting Ex. W, FAS 1708259 (emphasis added by MacDermid))), ███████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████" (*Id.* at 30 (quoting Ex. W, FAS 1708271 (emphasis added by MacDermid))). MacDermid also relies on the fact that another inventor of the '859 patent, Dr. Kannurpatti, informed DuPont's technology director and various business leaders that ██████████ ███████████████████████████████████████ (*Id.* (quoting Ex. Y, FAS 0347594 (emphasis added by MacDermid))). In addition, MacDermid points to a monthly report for the Digital FAST team, which again confirms that ████████████████████████████████ ████████████████████████████ (*Id.*) Further, MacDermid notes that Dr. Kannurpatti recommended ████████████████████.

DuPont, however, argues that none of the evidence proffered by MacDermid establishes that DuPont considered ████████ to be their best mode formulation for the photosensitive element claimed by the '859 patent. Instead, DuPont claims that Drs. Fan and Kannurpatti's deposition testimony clearly reveals that neither inventor believed that ██████████ represented the best mode for carrying out the claimed invention.

16

The Court notes that compliance with the best mode requirement set forth in 35 U.S.C. § 112 "is

a question of fact composed of [the following] two factual inquires[:] 'First the factfinder must

determine whether, at the time of filing the application, the inventor possessed a best mode for practicing

the invention.' . . . Second, if the inventor subjectively considered one mode to be preferred over all

others, then '[t]he second inquiry is whether the inventor's disclosure is adequate to enable one of

ordinary skill in the art to practice the best mode of the invention.'" *Bayer AG v. Schein*

*Pharmaceuticals, Inc.*, 301 F.3d 1306, 1320 (Fed. Cir. 2002) (citations omitted).  While the latter prong

involves an objective inquiry, the former is highly subjective.  Given the nature of the best mode inquiry,

the Court finds MacDermid's arguments concerning this question of fact as well as the evidence

proffered in support of same to be in sufficient to warrant an *in camera* review of DuPont's documents.

While the evidence presented by MacDermid certainly shows that ███████████████████

██████████████████████████████, that is simply not enough.  The mere fact

that a product may be suitable for an application is a far cry from establishing that it is the best mode for

carrying out same.  A clear factual dispute exists with respect to whether ████████ represented the

best mode for carrying out the invention claimed in the '859 patent.  As a result, the Court lacks an

adequate basis to conduct an *in camera* review of DuPont's documents based on DuPont's alleged

failure to disclose the best mode for carrying out its invention to the USPTO.

Everything considered the Court finds that the evidence relied upon by MacDermid to show that

DuPont misrepresented and/or omitted material information from the USPTO while prosecuting the '859

patent does not provide the Court with an adequate factual basis to support a good faith belief by a

reasonable person that *in camera* review of DuPont's privileged documents may reveal evidence to

establish the applicability of the crime-fraud exception to the attorney-client privilege.  First, many of the

statements relied upon by MacDermid to establish that DuPont omitted or misrepresented material

information, such as those found in DuPont's internal documents regarding ██████████████

17

███████████████████████████████████████ or those made by some of the inventors of the

'859 patent to the effect that ████████████████████████████████████████████

████████, are simply too broad and too generic to render DuPont's claimed invention unpatentable.

Basic patent law establishes that the claims of a patent define the invention. A corollary of this basic

tenet is that broad statements regarding the general subject matter of a patent do not define the invention

and are incapable of rendering the invention unpatentable. Instead, only statements that address the

specific claims and claim limitations of the patent at issue can effect the patentability of the claimed

invention.

Second, in several instances where MacDermid raises specific pieces of allegedly material prior

art that DuPont failed to submit to the USPTO, MacDermid conveniently chooses to ignore information

put forth by DuPont that calls into question MacDermid's claims regarding the alleged materiality of the

concealed information. This is true despite the fact that the parties had the opportunity to submit

supplemental briefing. While the Court in no way intends to rehash the analysis it engaged in above, the

best example of this is likely MacDermid's failure to address DuPont's argument that the '500 patent is

cumulative in light of the '275 and EP '300 patents, both of which DuPont disclosed to the USPTO.

MacDermid makes much hay over the fact that DuPont did not disclose the '500 patent to the USPTO in

prosecuting the '859 patent after it relied on same to get the Agfa patent revoked. Not once, however,

does MacDermid address DuPont's argument that the '500 patent is cumulative in light of the '275 and

EP '300 patents. Instead, without ever even mentioning, let alone addressing in detail, DuPont's

arguments regarding the '275 and EP '300 patents, MacDermid makes the conclusory assertion that any

argument that the '500 patent is cumulative is meritless. Reason would dictate that if MacDermid had a

good argument regarding why the '500 patent was not cumulative in light of the '275 and EP '300

patents, it would have made it. MacDermid did not. Other examples include MacDermid's failure to

discuss whether DuPont's Agfa Opposition is material under *Lydall*, why DuPont's disclosure of its

18

DPH digital plate does not render MacDermid's CBU product cumulative or why DuPont's disclosure of

the 3M '859 patent does not render certain teachings of the undisclosed '761 patent cumulative.

To be clear, the Court does not find MacDermid's showing lacking simply because DuPont

challenges the arguments raised by MacDermid. In this regard, it is not the fact that MacDermid and

DuPont disagree about such things as whether the '500 patent is cumulative of other references disclosed

to the USPTO that undermines MacDermid's position. The fact that the parties disagree is not

unexpected and would not necessarily prevent the Court from determining that MacDermid established

an adequate factual basis to reasonably suggest that DuPont misrepresented or withheld material

information from the USPTO, which in turn could support a reasonable, good faith belief that an *in

camera* review of DuPont's documents would reveal evidence to establish the crime-fraud exception to

the attorney-client privilege. Instead, it is MacDermid's utter failure to address key arguments raised by

DuPont that renders its showing insufficient. In this regard, MacDermid is its own saboteur. Had

MacDermid countered arguments raised by DuPont, such as DuPont's arguments regarding of the '275

and EP '300 patents or 3M '859 patent, by explaining that the '275 and EP '300 patents do not cause the

'500 patent to be cumulative for x, y, z reasons or that the 3M '859 patent does not render the teachings

of the '761 patent cumulative for a, b, c reasons, the situation addressed by the Court would be much

different. MacDermid, however, did not and as a result, there are significant flaws in its arguments.

Given these flaws, MacDermid has not met its burden of proof. No single category of documents

relied upon by MacDermid to establish that DuPont misrepresented or concealed material information

from the USPTO is sufficient to warrant the Court's *in camera* review of DuPont's privileged

documents. More importantly, given the weaknesses contained in MacDermid's individual arguments

concerning each single category of allegedly misrepresented or concealed information, even when the

Court views the evidence proffered by MacDermid collectively, the Court is unpersuaded that an

adequate factual basis exists to support a good faith belief by a reasonable person that *in camera* review

of DuPont's privileged documents may reveal evidence to establish the crime-fraud exception to the attorney-client privilege. To the contrary, the Court finds that it would be unreasonable, under these circumstances, to conduct an *in camera* review of DuPont's documents. This is especially true in light of the fact that MacDermid had the opportunity to sure up its arguments and respond to those made by DuPont in its supplemental briefing.

### C.  Deceptive Intent

However, even if the Court had determined that MacDermid had succeeded in establishing a factual basis to reasonably suggest that DuPont had misrepresented and/or concealed material information from the USPTO such that an *in camera* review might be warranted if evidence of the other elements of fraud existed, the Court would nevertheless deny MacDermid's request for an *in camera* review because MacDermid has failed to provide the Court with any evidence that DuPont had a specific intent to deceive the USPTO. While MacDermid need not make nearly as strong a showing of deceptive intent to obtain an *in camera* review of DuPont's documents as it would to actually prove the existence of *Walker Process* fraud, MacDermid does need to provide the Court with some evidence of deceptive intent outside of the privileged documents. *Zolin*, 491 U.S. at 570. Here, MacDermid's evidence of deceptive intent essentially boils down to its conclusion that there is no reasonable explanation for DuPont's failure to disclose the aforementioned material to the USPTO other than that DuPont intended to and succeeded in deceiving the USPTO. Such a conclusion is insufficient and does not provide the Court with a sufficient basis to conduct the requested *in camera* review.

### D.  The Court's Discretion Over Whether to Conduct an *In Camera* Review

Moreover, even if the Court had reached a different conclusion and determined that MacDermid had established "a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies" (*Id.* at 572), the Court would nevertheless, under the circumstances of this case, exercise its

20

discretion to decline to conduct the requested *in camera* review. In this regard, the Court notes that MacDermid has asked the Court to review a voluminous amount of information. Even if the Court were to limit its review to the initially requested 250 documents, that review would likely result in the Court inspecting several hundreds if not thousands of pages of information, quite a substantial, time consuming and burdensome review.[3]  Given the Court's current caseload, the Court simply is not in a position to engage in such a review. *See Id.* (stating that court has discretion regarding whether to conduct *in camera* review and one factor to consider in determining whether to engage in same is volume of materials court has been asked to review).  As a result, at a minimum, if the Court had determined that an *in camera* review was appropriate, the Court would have required MacDermid to pare down its request.

Further, before the Court would elect to engage in any substantial *in camera* review, it would require a strong showing that the information reviewed *in camera* together with the other evidence produced by MacDermid would establish the applicability of the crime-fraud exception to the attorney client privilege.  For the reasons stated above, MacDermid has not established same.  Indeed, even if the Court assumes that MacDermid's showing satisfies the threshold required to permit *in camera* review, MacDermid has not convinced the Court that, when taken together, the information reviewed *in camera* and that already produced to the Court makes it substantially likely that the crime-fraud exception to the attorney-client privilege will apply in this case.  As a result, given the scope of the requested review taken together with the Court's current caseload, even if permissible, the Court in its discretion declines to engage in the requested *in camera* review.

---

[3]The Court hesitates to guess how many thousands of pages of documents would be subject to its review if it also examined the 10 categories of documents set forth by MacDermid in its December 6, 2010 Supplemental Letter Brief.

## II.    Conclusion

For the reasons stated above, MacDermid's request that the Court conduct an *in camera* review of various documents subject to claims of privilege by DuPont in order to determine whether the crime-fraud exception to the attorney-client privilege applies is DENIED.

IT IS SO ORDERED.

IT IS FURTHER ORDERED THAT THE CLERK OF THE COURT TEMPORARILY SEAL THIS LETTER OPINION & ORDER.  SHOULD EITHER PARTY BELIEVE THAT ANY PORTION OF THIS LETTER OPINION & ORDER BE PERMANENTLY SEALED, THEN IT MUST FILE A FORMAL MOTION TO SEAL NO LATER THAN AUGUST 12, 2011.  IF NO SUCH MOTION IS FILED, THE CLERK OF THE COURT SHALL BE DIRECTED TO UNSEAL SAME ACCORDINGLY.

s/ Tonianne J. Bongiovanni
**TONIANNE J. BONGIOVANNI**
**United States Magistrate Judge**